UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL A. GONZALEZ (CDCR # G-29258),<br><br>    Petitioner,<br><br>    v.<br><br>CONNIE GIPSON, Warden,<br><br>    Respondent.<br>_____/ | No. C-13-0964 EMC (pr)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## I. INTRODUCTION

Miguel A. Gonzalez filed this *pro se* action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The Court earlier denied Respondent's motion to dismiss the petition as untimely. Respondent has filed an answer to the petition and Mr. Gonzalez has filed a traverse. For the reasons discussed below, the Court denies the petition.

## II. BACKGROUND

On April 15, 2008, Mr. Gonzalez entered a guilty plea in Santa Cruz County Superior Court to four felonies in four separate cases in a bundled plea agreement. He pled guilty to aiding and abetting a felony assault in Case No. F16220, assault with a deadly weapon in Case No. WF00200, armed robbery with a deadly weapon in Case No. WF00210, and assault with a deadly weapon with personal infliction of great bodily injury and a gang enhancement in Case No. WF00212. He was sentenced on July 15, 2008 to 12 years in state prison. No appeal was taken.

The petition for writ of habeas corpus in this action challenges only one of the four convictions covered by that plea agreement. Specifically, Mr. Gonzalez challenges his conviction in Case No. F16220, in which he pled guilty to aiding and abetting a felony assault and for which he received a one-year sentence. (Except as otherwise noted, all further discussion in this order about state court proceedings pertain to the proceedings in Case No. F16220.)

Although Gonzalez had pled guilty, several co-defendants opted to go to trial. During a hearing on motions in limine on August 5, 2008, it was disclosed that the prosecution had failed to disclose a prosecutor's interview of a key witness, Ashley Crow. *See* Docket # 2 at 84. The court stated that the nondisclosure of "this major interview of the most important witness in the case" was "a discovery violation," and vacated the trial because the problem could not be resolved before the jury's expected arrival later that day. *Id.* at 84-86. Neither Mr. Gonzalez nor his attorney, John Thornton, was present at this hearing.

On October 23, 2008, another hearing in the co-defendants' case was held before another judge. *See* Docket # 2 at 22-33. The court found prosecutorial misconduct and a *Brady* violation with regard to the interview of that key witness, Ashley Crow.[1] The court "considered dismissing all of the charges against all defendants" as well as other lesser remedies. *Id.* at 28. The court ultimately determined to "set aside the holding order in this case and reopen the preliminary hearing" so that the witness' testimony could be presented. *Id.* at 31-32. The court further stated that "[t]he pleas of Nathanael Avila and Miguel Gonzalez may be set aside at this time if they choose to and request that." *Id.* at 32.[2] Counsel for Mr. Avila was given until the further

---

[1] The court stated that deputy district attorney Celia Rowland intentionally had (a) failed to disclose that such an interview was being contemplated, (b) interviewed Ms. Crow during a preliminary hearing while at the same time discussing with defense counsel the idea of proceeding by way of a stipulation to use the preliminary hearing transcripts, and (c) not disclosed that she had interviewed Ms. Crow until shortly before the commencement of the trial. *See* Docket # 2 at 23-25, 30 (10/23/09 RT 2-4, 9).

[2] The court's full statement on the point was, as oral rulings sometimes are, somewhat less than eloquent: "The pleas of Nathanael Avila and Miguel Gonzalez may be set aside at this time if they choose to and request that, with the understanding that in either event should they be subsequently convicted of a crime, may they be convicted of any crime in excess of that that they've pled to nor may they suffer any penal sanction at any time in excess of that that's already been imposed. But both of their pleas were taken by Ms. Rowland or by the District Attorney's Office at a time when they were under the impression that Ms. Crow was testifying and that two people had

2

1  preliminary hearing on November 17 to determine whether to move to withdraw the plea. *Id.* at 33.
2  Neither Mr. Gonzalez nor his attorney, Mr. Thornton, was present at the hearing.

3  Attorney Thornton apparently did not contact Mr. Gonzalez until December 2008, at which
4  time Mr. Thornton told Mr. Gonzalez "to write the court to withdraw his plea, for [Mr. Thornton]
5  was not his attorney since after plea/sentencing." Docket # 2 at 6. Mr. Gonzalez wrote to the court
6  on March 4, 2009, and the superior court appointed Geoffrey Rawlings as his attorney on March 15,
7  2009. *See id.* Mr. Gonzalez (represented by Mr. Rawlings) filed a formal motion to withdraw the
8  plea on July 17, 2009. *See* Docket # 14-5. The motion was denied on August 6, 2009. *See* Docket
9  # 14-1 at 8.

10  Mr. Gonzalez (represented by Mr. Rawlings) later filed a petition for writ of habeas corpus in
11  the Santa Cruz County Superior Court. The petition was denied on the grounds that petitioner had
12  not attached relevant pleadings and reporter's transcripts, and because of an unjustified delay in
13  presenting the claims. *See* Docket # 27-2 at 3.

14  Mr. Gonzalez filed a petition for writ of habeas corpus in the California Supreme Court. The
15  petition was denied on January 30, 2013. Docket # 27-2 at 77.

16  Mr. Gonzalez then filed this action. His petition asserts two claims: (1) ineffective assistance
17  of state habeas counsel, and (2) his guilty plea was involuntary or unknowing because *Brady*
18  materials had not been disclosed to him before he entered his plea. The court earlier denied
19  respondent's motion to dismiss. Respondent thereafter filed an answer to the petition and Mr.
20  Gonzalez filed a traverse.

### III.   JURISDICTION AND VENUE

22  This Court has subject matter jurisdiction over this habeas action for relief under 28 U.S.C.
23  § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the petition concerns the
24  conviction and sentence of a person convicted in Santa Cruz County, California, which is within this
25  judicial district. 28 U.S.C. §§ 84, 2241(d).

---

28  gotten out of the car, when in fact the testimony subsequently during the undisclosed interview was contrary to that." *Id.* at 32-33 (errors in source).

## IV. STANDARD OF REVIEW

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The Antiterrorism And Effective Death Penalty Act of 1996 ("AEDPA") amended § 2254 to impose new restrictions on federal habeas review. A petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. "A federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was 'objectively unreasonable.'" *Id.* at 409.

## V. DISCUSSION

A. <u>The Claims Were Rejected On The Merits By The State Court</u>

Mr. Gonzalez's petition for writ of habeas corpus in the California Supreme Court was denied in an order with unusual citations. The entirety of the text of the California Supreme Court's order denying the petition stated: "The petition for writ of habeas corpus is denied on the merits.

4

(See *Harrington v. Richter* (2011) 562 U.S. ___ [131 S.Ct. 770, 785], citing *Ylst v. Nunnemaker* (1991) 501 U.S. 797, 803.)" Docket # 27-2 at 77 (bracketed material in source). The statement that the petition was "denied on the merits" would be easy to interpret but for the addition of the citation to *Harrington* citing *Ylst*, because the latter pairing of citations would suggest that this court should look through to the lower state court decision. In *Harrington*, the Supreme Court explained: "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary. *Cf. Harris v. Reed*, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis). [¶] The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely. *See, e.g., Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)." *Harrington v. Richter*, 562 U.S. 86, 99-100 (2011) (parallel citations omitted). *Ylst*, in turn, had announced the following presumption: "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground. If an earlier opinion "'fairly appear[s] to rest primarily upon federal law,'" *Coleman[ v. Thompson*, 501 U.S. 722, 740 1991], we will presume that no procedural default has been invoked by a subsequent unexplained order that leaves the judgment or its consequences in place. Similarly where, as here, the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits." *Ylst*, 501 U.S. at 803.

The California Supreme Court's decision is ambiguous because it may mean one of two things: One possibility is that the California Supreme Court denied the petition on the merits without regard for the procedural problems identified by the superior court. The other possibility is that the California Supreme Court denied the petition on the merits *and* for the reasons stated in the last reasoned decision (i.e., the superior court's denial of the petition for failure to attach exhibits and as unjustifiably delayed). Although those two possibilities are reasonable interpretations of the ambiguous order, it would be *unreasonable* to interpret the order to mean that the California Supreme Court rejected the claims only for the procedural reasons mentioned by the superior court.

5

This third reading is unreasonable because it would render as surplusage the California Supreme Court's specific words that the petition was "denied on the merits." Given that the California Supreme Court said it denied the petition "on the merits," this court must accept that there was a rejection on the merits. Since the California Supreme Court did reject the petition on the merits, it does not affect this court's analysis if it also denied the petition for procedural reasons. Moreover, at least one of the claims in the petition to the California Supreme Court was not presented in the petition to the superior court, so that the lower court's procedural rejection did not apply to it. Specifically, Mr. Gonzalez's claim that he received ineffective assistance of habeas counsel was not presented to the superior court and instead was based on the attorney's performance in that court, and therefore was not rejected by that court on procedural grounds.

The California Supreme Court's summary denial of Mr. Gonzalez's petition was a decision on the merits and is the decision to which § 2254(d) applies. *See Harrington*, 562 U.S. at 100 ("§ 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

B.  Ineffective Assistance of Habeas Counsel/*Martinez v. Ryan* "Claim"

Mr. Gonzalez's first claim for relief is that his state habeas counsel provided ineffective assistance by "failing to fully present and exhaust habeas issues," "and was ineffective under intervening change of the law set forth by *Martinez v. Ryan*, 132 S. Ct. 1309." Docket # 2 at 5. Throughout his discussion of the claim, Mr. Gonzalez argues that he has shown cause and prejudice to overcome a procedural default, and that his otherwise untimely habeas petition should be considered due to counsel's ineffectiveness. Docket # 2 at 5-12. He cites the *Martinez* case on numerous pages. *See id.* at 5, 9, 10, 11, and 12.

Mr. Gonzalez misunderstands the holding of *Martinez v. Ryan*, 132 S. Ct. 1309 (2012). That case did not create a new basis for federal habeas relief. In *Martinez*, the Supreme Court held that a procedural default does not bar a federal habeas court from hearing a substantial claim of ineffective assistance of counsel at trial if, in the initial-review collateral proceeding, (a) there was no counsel or if counsel in that proceeding was ineffective and (b) state law required that an ineffective assistance of trial counsel claim be raised in an initial-review collateral proceeding. *Martinez*, 132

S. Ct. at 1316-21.  *Martinez* can be quite important for a petitioner attempting to overcome a procedural default, but *Martinez* did not create an independent right to relief based on ineffective assistance of habeas counsel and instead decided not to decide the constitutional question.  The lower court had addressed whether a prisoner had a right to effective counsel in collateral proceedings, which provide the first occasion to raise a claim of ineffective assistance of trial counsel.  The Supreme Court opined: "This is not the case, however, to resolve whether that exception exists as a constitutional matter." *Id.* at 1315.  Instead, the matter could be resolved under the procedural default doctrine, i.e., the "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.*  *Martinez* is inapplicable to Mr. Gonzalez's situation because this court has not found that any of Mr. Gonzalez's claims are procedurally defaulted and has not found that his federal habeas petition is untimely.  On the merits, therefore, *Martinez* does not provide a source of federal habeas relief.

Furthermore, Mr. Gonzalez cannot obtain federal habeas relief based on his claim that he received ineffective assistance of state habeas counsel, because there is no "clearly established Federal law, as determined by the Supreme Court of the United States" establishing the right to habeas counsel, which is a necessary predicate to relief in any habeas case (such as this one) governed by the AEDPA.  *See* 28 U.S.C. § 2254(d)(1).  Without the existence of clearly established federal law, any state court's adjudication of the claim cannot be said to be contrary to or an unreasonable application of such law.  *See Carey v. Musladin*, 549 U.S. 70, 77 (2006); *see, e.g., id.* at 76-77 (given the lack of holdings from the Supreme Court and the wide divergence of the lower courts on the issue of the potentially prejudicial effect of spectators' courtroom conduct, the state court's determination that the petitioner was not inherently prejudiced by spectators wearing buttons depicting the murder victim was not contrary to or an unreasonable application of clearly established Supreme Court law); *Varghese v. Uribe*, 736 F.3d 817, 821 (9th Cir. 2013) (because there is no Supreme Court authority that squarely addresses petitioner's claim – that a criminal defendant's rights to counsel and due process are violated when the state court conditions his access to, and testing of, the prosecution's limited evidence on the disclosure of the test results to the prosecution –

the state appellate court had no specific rule to apply, so its decision was not an unreasonable application of clearly established Supreme Court precedent); *Foote v. Del Papa*, 492 F.3d 1026, 1030 (9th Cir. 2007) (Nevada Supreme Court's rejection of petitioner's conflict of interest claim was neither contrary to nor an unreasonable application of clearly established federal law; although Supreme Court had held an irreconcilable conflict between a defendant and his trial counsel may entitle him to new counsel, no Supreme Court case had held that an irreconcilable conflict between the defendant and his appointed appellate counsel violates the Sixth Amendment).

     First, the Supreme Court has never determined that there is a constitutional right to state court collateral review of a conviction. In *Case v. Nebraska*, 381 U.S. 336 (1965), the Supreme Court granted certiorari "to decide whether the Fourteenth Amendment requires that the States afford state prisoners some adequate corrective process for the hearing and determination of claims of violation of federal constitutional guarantees." *Id.* at 337. However, the Supreme Court ultimately did not decide the issue because, after certiorari was granted, Nebraska enacted a statute providing a post-conviction remedy that allowed for consideration of claims of the denial of federal constitutional rights. *Id.* The Supreme Court determined that Nebraska's new statute appeared to provide the sort of hearing at issue and therefore remanded the case for reconsideration in light of the supervening statute. *Id.* The resolution of *Case* thus shows that at that time it was an open question whether there was a constitutional right to state court collateral review of a state court conviction. *See generally Kyles v. Whitley*, 498 U.S. 931, 932 (1990) (Stevens, J., concurring in order denying stay of execution) (citing *Case* for the proposition that "the scope of the State's obligation to provide collateral review is shrouded in so much uncertainty"); *Huffman v. Florida*, 435 U.S. 1014, 1017 (1978) (Stevens, J., concurring in denial of certiorari) (citing *Case* in support of proposition that, although summary reversal may have been appropriate on direct review of the conviction, and although the petitioner may succeed in a federal habeas petition, it "does not follow" "that this Court has the power to compel a State to employ a collateral post-conviction remedy in which specific federal claims may be raised.") No subsequent Supreme Court case resolves the issue left undecided in *Case*. According to one authority, the Supreme Court never had occasion to revisit the issue left open in *Case* because "after the Court's decision in that case every State in the

8

Union did, in the exercise of reasonably deliberate speed, adopt an adequate State procedure that would be available to a state prisoner seeking postconviction relief." *Richardson v. Miller*, 716 F. Supp. 1246, 1252 (W.D. Mo. 1989).

Second, the Supreme Court has not held that a criminal defendant has a right to counsel on state court collateral review. *See Coleman v. Thompson*, 501 U.S. 722, 756-57 (1991) (no constitutional right to counsel on appeal from a state habeas trial court judgment); *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("We have never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions, [citation], and we decline to so hold today"). This lack of Supreme Court authority on this point was mentioned in *Martinez v. Ryan*, 132 S. Ct. at 1315, where (as noted earlier in this discussion) the Supreme Court decided not to decide that constitutional question. *See id* at 1315. Not only is there no Supreme Court case establishing a right to counsel on collateral review, the habeas statute specifically precludes relief based on the "ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings." 28 U.S.C. § 2254(i).

The Supreme Court has made clear that a state court's failure to extend a Supreme Court rule to a new context does not support relief under § 2254(d)(1). "Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably *applies* this Court's precedent; it does not require state courts to *extend* that precedent or license federal courts to treat the failure to do so as error." *White v. Woodall*, 134 S. Ct. 1697, 1706 (2014) (in capital case, not objectively unreasonable for state court not to extend to penalty phase constitutional rule that applies to guilt phase).

When the California Supreme Court considered Mr. Gonzalez's claim that he received ineffective assistance of counsel in his state habeas proceedings in the superior court, there was no "clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), to apply to his claim. Without the existence of clearly established Federal law, the California Supreme Court's rejection of the claim cannot be said to be contrary to or an unreasonable application of such law. *See Carey v. Musladin*, 549 U.S. at 76-77. Section 2254(d)(1) therefore requires the denial of Mr. Gonzalez's first claim.

## C. Challenge To Guilty Plea

In his second claim for relief, Mr. Gonzalez challenges his guilty plea. He alleges that he "involuntarily pled no contest and is under illegal sentence and conviction based on prosecutor's *Brady* error that violated his federal constitutional rights [to] due process." Docket # 2 at 13.[3] The alleged *Brady* material was the information that the district attorney had "coached" a witness during a preliminary hearing that could have been used for "impeachment/credibility" purposes. *Id.* at 14. A controlling Supreme Court case compels rejection of Mr. Gonzalez's *Brady*-based challenge to his guilty plea.[4]

The "Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." *United States v. Ruiz*, 536 U.S. 622, 633 (2002). By pleading guilty, a defendant "foregoes not only a fair trial, but also other accompanying constitutional guarantees," such as the privilege against self-incrimination, as well as the rights to confront one's accusers and to trial by jury. *Id.* at 628-29 (citing *Boykin v. Alabama*, 395 U.S. 238, 243 (1969)). "Given the seriousness of the matter, the Constitution insists, among other things, that the defendant enter a guilty plea that is 'voluntary' and that the defendant must make related waivers 'knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences.'" *Id.* at 629 (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970) (alterations in original)). But this does not mean that impeachment information must be disclosed before a guilty plea may be entered. *See id.*

> [I]mpeachment information is special in relation to the *fairness of a trial*, not in respect to whether a plea is *voluntary* ("knowing," "intelligent," and "sufficient[ly] aware"). Of course, the more information the defendant has, the more aware he is of the likely consequences of a plea, waiver, or decision, and the wiser that

---

[3] Notwithstanding his assertion that he pled no contest, the reporter's transcript shows that Mr. Gonzalez pled guilty, rather than no contest, in this case. Docket # 27-1 at 11. In California, a no contest (or nolo contendere) and guilty plea have the same legal effect.

[4] In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. The Supreme Court has since made clear that the duty encompasses impeachment evidence as well as exculpatory evidence. *See United States v. Bagley*, 473 U.S. 667, 676 (1985).

> decision will likely be. But the Constitution does not require the prosecutor to share all useful information with the defendant. *Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977) ("There is no general constitutional right to discovery in a criminal case"). And the law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances-even though the defendant may not know the *specific detailed* consequences of invoking it. A defendant, for example, may waive his right to remain silent, his right to a jury trial, or his right to counsel even if the defendant does not know the specific questions the authorities intend to ask, who will likely serve on the jury, or the particular lawyer the State might otherwise provide.

*Ruiz*, 536 U.S. at 629-30 (alteration in original). The Supreme Court also explained that the Constitution "does not require complete knowledge of the relevant circumstances" before a defendant may plead guilty. *Id.* at 630. The *Ruiz* Court rejected the Ninth Circuit's view that a guilty plea is not voluntary unless the prosecutors first made the same disclosure of material impeachment information that the prosecutors would have to make under *Brady* if the defendant chose to go to trial. *See id.* at 629, 632.[5]

Mr. Gonzalez's claim that his guilty plea was not voluntary or intelligent because the prosecution had not disclosed *Brady* material that would allow him to impeach one of the witnesses to the crime fails. The Supreme Court's decision in *Ruiz* clearly established that the Constitution does not require disclosure of impeachment material before a defendant enters a guilty plea.[6] Therefore, the California Supreme Court's rejection of Mr. Gonzalez' challenge to his guilty plea was not contrary to or an unreasonable application of clearly established federal law.

D.   <u>A Certificate Of Appealability Will Not Issue</u>

Mr. Gonzalez has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and this is not a case in which "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Accordingly, a certificate of appealability is **DENIED**.

---

[5] It should be noted that *Ruiz* was limited to *impeachment* evidence. There is disagreement as to whether *Ruiz* applies to *exculpatory* evidence. *See Robertson v. Lucas*, 753 F.3d 606, 621 (6th Cir. 2014).

[6] Even if there were to be some exception to the rule in *Ruiz*, there is no clearly established federal law establishing such.

11

## VI. CONCLUSION

The petition for writ of habeas corpus is **DENIED** on the merits. The Clerk shall close the file.

IT IS SO ORDERED.

Dated: October 5, 2015

_____
EDWARD M. CHEN
United States District Judge